Howell, J.
The plaintiffs, residents of Texas, in 1862, transferred to the defendants, merchants in New Orleans, several warehouse receipts for twenty-one bales of cotton, with the marks and weights of the bales, and stored in a warehouse in Jefferson, Texas, weighing 10,780 lbs., and amounting at 10 cents to $1,078, in settlement of a note of theirs held by the defendants, which, on receipt of said warehouse receipts, they requested to be sent to them. On the 7th March, 1862, the defendants acknowledged the letter containing said “receipts for twenty-one bales of cotton, inpayment of your account with us;” and on 26th same month, wrote: “ We enclose your note due of §908 16, settled by cotton deposited at J. & J. C. Murphy’s warehouse, on storage for our account.” On the 4th of April following, they again wrote, enclosing a statement of plaintiff’s account with them, showing an error in favor of the latter of §337 64, which they said was only discovered on balancing the account on the 1st of April, informing plaintiffs that they only wanted as much cotton as would cover the amount due them, as they could buy for less than ten cents in New Orleans, and proposing to buy the balance of cotton overpaid to them in error at 7J^ cents, and authorizing plaintiffs to draw on them for the difference, if the proposition is accepted; saying, that about 15 bales would cover their claim, but retaining the warehouse receipts.
■ To this letter no reply was received; but on the 28th March, a'few days prior to its date, the plaintiffs wrote to defendants, informing them of a mistake of §340 57 overpaid, “ which,” they say, “ you will please settle Messrs. Kaiser & Joseph’s note for us and credit us with the balance, and when one of us will be down we will settle with you. ”
This letter, we presume, from the tenor of defendant’s letter of 4th of April, was received before the latter was written. No further communication passed until June, 1865, when defendants sent an agent with said receipts, and an order for the twenty-one bales “ belonging ” to them, as per receipts. When this agent arrived at Jefferson, Texas, he was informed by the warehouse keepers, that thirteen bales of said cotton had been impressed by the so-called Confederate Government, leaving eight bales, two of which were claimed by the said Murphys for storage. He paid all the charges, and shipped the eight bales to defendants, retaining the receipts for the 13 bales. Some days after, he met at said warehouse one of the plaintiffs, who set up no claim to any of the cotton, but congratulated him (the agent) on having been able to save six bales for defendants.
At a subsequent interview the said plaintiff informed the agent that a *380 mistake had occurred in the settlement with defendants, and asked the agent to pay the difference in money to rectify the mistake, which was declined, as the agent was unauthorized, and said plaintiff was referred to defendants, who were perfectly able to pay. The eight bales of cotton were shipped by the defendants to Liverpool, and sold.
Upon this state of facts the lower court gave judgment in favor of plaintiffs for one thousand five hundred and fifty dollars and twenty-one cents, with interest from judicial demand, as the value of six bales claimed by them, as not having been sold to defendants, and allowed the latter three hundred and eighty-six dollars and thirty-two cents, on their reconventional demand, for charges, etc., on the cotton; from which judgment the defendants have appealed.
They contend that in the form of action adopted by plaintiffs, the latter ean recover nothing. As the evidence is admitted without legal objection, we can determine the rights of the parties.
We think it clear from all the facts, that the twenty-one bales of cotton were at the risk of the defendants, and that all that the plaintiffs are entitled to recover from the defendants is the excess over the amount of the indebtedness of the former to the latter. This is the view which the plaintiffs took of the matter at the time of the transaction, and which they held after the cotton had been shipped by defendants’ agent in 1865, as shown by what passed at their interview with said agent.
The defendants seemed to have entertained a different view, when they discovered the error in the amount due them in 1862, and made a proposition to take any excess in the quantity of cotton, at a smaller price, but their subsequent conduct was in harmony with the plaintiffs’ view, and they, in accordance therewith, sent the receipts and an order for the whole twenty-one bales, and accepted and sold the eight.
Whatever may have been the respective rights and obligations of the parties, prior to this action on the part of the defendants and acquiescence of the plaintiffs, we think it then resulted that the defendants were considered the owners of and responsible for the whole twenty-one bales, which were delivered to them in March, 1862, by the delivery of ‘the warehouse receipts, containing the marks and weights, and plaintiffs’ letter fixing the price and total amount.
The defendants at that time reported to the plaintiffs the amount actually due by the latter, showing the sum then in their hands belonging to plaintiffs, which sum we consider correct, differing only a few dollars from the amount claimed by plaintiffs in their letter of 28th March, 1862.
We do not see how, under the fads, the plaintiffs could select any six bales as not having been sold, and require the defendants to pay the value thereof at the date of instituting suit. The possession of the warehouse receipts, in this particular case, was the possession of the property. We must decide this case on the evidence before us.
It is therefore ordered that the judgment appealed from be reversed, and that plaintiffs recover of defendants the sum of three hundred and thirty-seven dollars and sixty-four cents, with legal interest, from the 10th March, 1862, and costs in the lower court; and that defendants’ reconventional demand be dismissed, plaintiffs and appellees to pay costs of appeal